```
                                          U.S. DISTRICT COURT
                                       NORTHERN DISTRICT OF TEXAS
        IN THE UNITED STATES DISTRICT COURT     FILED
            NORTHERN DISTRICT OF TEXAS
               FORT WORTH DIVISION              MAY 23 2012

                                       CLERK, U.S. DISTRICT COURT
                                       By _____
                                                     Deputy
```

NEIL GILLESPIE, ET AL.,            §
                                   §
        Plaintiffs,                §
                                   §
VS.                                §    NO. 4:11-CV-388-A
                                   §
BAC HOME LOANS SERVICING, LP,      §
ET AL.,                            §
                                   §
        Defendants.                §

### MEMORANDUM OPINION
and
### ORDER

Now before the court is the motion of defendants, BAC Home

Loans Servicing, LP ("BAC"), and Federal National Mortgage

Association ("Fannie Mae"), to dismiss in part the pleading of

plaintiffs, Neil Gillespie and Ona Gillespie, for failure to

state a claim upon which relief may be granted.[1] Plaintiffs filed

a response to the motion, and defendants filed a reply. After

having considered the parties' filings, the record, the amended

complaint filed by plaintiffs on December 22, 2011, and the

pertinent legal authorities, the court has concluded that the

motion to dismiss should be granted in part and denied in part.[2]

---

[1]Defendants did not move to dismiss the breach of contract or "fraudulent lien" claims.

[2]The court has subject matter jurisdiction over plaintiffs' claims against Fannie Mae by reason of
(continued...)

I.

Background

Plaintiffs initiated this removed action by a pleading filed in the District Court of Tarrant County, 348th Judicial District, on October 19, 2011, against defendants, in case No. 348-252648-11.[3]  Defendants removed the action to this court on June 10, 2011, and filed their first motion to dismiss on September 19, 2011. The court, by order of November 18, 2011, denied defendants' motion to dismiss and ordered plaintiffs to file an amended complaint that complied with the requirements of Rule 8(a), Rule 10(a), and if applicable, Rule 9 of the Federal Rules

_____

(...continued)

12 U.S.C. § 1452(f), which provides, in pertinent part, that "all civil actions to which [Fannie Mae] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value." The court has supplemental jurisdiction, 28 U.S.C. § 1367, over all claims against BAC Home Loans Servicing, LP.

   In their notice of removal, defendants alleged federal question jurisdiction pursuant to 28 U.S.C. § 1331, given that plaintiffs alleged certain state law claims in their state court petition that were preempted by the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. § 1681. See Notice of Removal, Ex. 1, at 5-6, ¶¶ 7-9. Because the court is only considering the allegations in the second amended complaint--which does not allege any claims that could trigger complete federal preemption-- the court need not address the issue of whether an independent basis for federal question jurisdiction presently exists.

   Additionally, in their notice of removal, defendants alleged the court had subject matter jurisdiction over the parties by reason of diversity jurisdiction. The court is not persuaded that the allegations in the second amended complaint show that the minimum amount in controversy has been met. Thus, the court declines to conclude that subject matter jurisdiction exists because of either federal question or diversity jurisdiction.

   [3]Plaintiffs' original state court petition alleged claims for (1) violations of the Texas Finance Code ("Finance Code") (2) and the Deceptive Trade Practices Act ("DTPA"), (3) improper credit reporting, defamation, and libel, (4) negligent misrepresentation, (5) wrongful foreclosure, and (6) wrongful eviction.

of Civil Procedure. Plaintiffs filed an amended complaint on December 9, 2011.[4]

On December 22, 2011, plaintiffs filed a second amended complaint ("Complaint") to clarify their allegations. In summary, plaintiffs made the following allegations in their Complaint:

On September 14, 2007, plaintiffs executed a note in the principal amount of $194,750.00, which was secured by a deed of trust to their home at 2412 Forest Park Circle, Mansfield, Texas 76063. Compl. at 3-4. Mortgage Electronic Registration Systems, Inc. ("MERS"), was named as beneficiary and nominee for American Sterling Bank. Id. at 4.

Plaintiffs made all of their regular payments on their loan through 2009. Id. at 6, ¶ 18. During January and February 2010, however, plaintiffs had "significant financial difficulties" and began to "miss[]" payments.[5] Id., ¶¶ 18, 20. In the "first quarter of 2010," plaintiffs applied for a loan modification with BAC through the Home Affordable Modification Program. Id., ¶ 20. Plaintiffs were told on March 18, 2010, that they were "pre-qualified" for "the HAMP, a federal program administered by

_____

[4]Plaintiffs' first amended complaint, filed on December 9, 2011, alleges claims for (1) "Fraudulent Lien Related Instrument," (2) violations of the Finance Code (3) and the DTPA, (4) negligent misrepresentation, (5) wrongful foreclosure, (6) violation of the Texas Property Code ("Property Code"), (7) breach of contract, and (8) unreasonable collection efforts.

[5]Plaintiffs alleged that "the payments Plaintiffs had recently then missed would be added to the end of the Loan." Compl. at 6, ¶¶ 18, 20.

Defendant Fannie Mae." Id. They were also told "BAC was going to modify the loan, [and] lower[] the interest rate and the monthly payments, and that the payments plaintiffs had recently then missed would be added to the end of the loan." Id. BAC employees gave plaintiffs a reduced, "new monthly amount" to pay under the HAMP loan modification and also gave "explicit and detailed instructions' on how to make "new installment payments by phone." Id. at 6-7, ¶¶ 22-24.

At some point, plaintiffs received a "trial modification offer" which they "accepted . . . by making payments pursuant to the terms of the contract." Id. at 19, ¶ 74. Plaintiffs made each such payment from March 18, 2010, through August 31, 2010. Id. at 7-8, ¶¶ 24, 28. During this period, plaintiffs were "repeatedly told" that, because they were "in the HAMP, BAC would not initiate foreclosure proceedings." Id. at 6-7, ¶¶ 21, 26. Throughout the process, "BAC personnel were always able to confirm that BAC had received Plaintiffs' payments under the HAMP." Id. at 7, ¶ 27.

When plaintiffs attempted to make their September 2010 payment, however, BAC declined the payment because the property had been "placed in foreclosure."[6] Id., ¶ 28. On September 3,

---

[6]Plaintiffs attempted twice to contact BAC to make the September 2010 payment, on August 31, 2010, and September 1, 2010. Compl. at 8, ¶¶ 28-29.

2010, plaintiffs received a letter dated August 31, 2010,
advising them their loan was referred to BAC's Foreclosure Review
Committee for review because BAC had not received their "past due
payments."[7] Id. at 8-9, ¶ 30.[8] Plaintiffs then received two
letters from BAC's law firm, Barrett Daffin Frappier Turner &
Engel, LLP ("Barrett"), both of which advised them their loan was
"in default" and a foreclosure sale had been scheduled for
October 5, 2010.[9] Id. at 9, ¶¶ 31-32. "At no time," however, "did
either Plaintiff receive a notice of default and opportunity to
cure from BAC" or a BAC representative before receiving the
notice of sale. Id., ¶ 32.

---

[7]The August 31, 2010 letter allegedly stated:
> We have not received your past due payments, so we have referred your home loan to
> our Foreclosure Review Committee for review. . . . This does not necessarily mean you
> will lose your home to foreclosure. We want to work with you and are here to help, so
> please read below about the various options available through BAC Home Loans
> Servicing, LP to help you avoid foreclosure. Then, call us at 1-800-262-4218 to tell us
> about your individual situation and together we'll evaluate how one of these options may
> help.

Compl. at 8-9. The first two options described in BAC' s letter were: (1) Repayment Plan; and (2) Loan
Modification. In the paragraph describing Loan Modification, BAC' s letter allegedly stated:
> If your financial situation has improved sufficiently to enable you to resume making
> payments, we may be able to restructure your loan. This would result in a more
> affordable monthly payment.

Id. at 9.

[8]Although plaintiffs said that this BAC letter was attached to the second amended complaint as
Exhibit A, it is not. Nothing is attached to the second amended complaint. There is a letter
attached to plaintiffs' first amended complaint, but it is dated August 31, 2010, is from the law firm
Barrett, and does not contain the language quoted by plaintiffs. See First Am. Compl., Ex. A.

[9]Both letters are attached to the first amended complaint. First Am. Compl., Ex. A & B.

Once plaintiffs learned of the foreclosure sale, they
continued to communicate "repeatedly" with BAC about their
application to modify the loan, but were unable "to resolve the
situation." Id., ¶ 33-34. Between September 1, 2010, and October
5, 2010, BAC employees, including one named Ken Osterberger, gave
plaintiffs "tedious documentation requests, and conflicting and
misleading information." Id. at 10, ¶ 34. On October 4, 2010,
Myrna Arroyo, an underwriter for BAC, told Mr. Gillespie over the
phone that "the foreclosure sale would not take place." Id. at 9-
10, ¶¶ 34-36.

On August 27, 2010, "[a]n Appointment of Substitute Trustee
was purported to be executed by an attorney-in-fact on behalf of
Defendant BAC," and was "placed of record" on September 10, 2010,
"as Instrument D210221683." Id. at 5, ¶ 13. However, plaintiffs
assert there was "[n]o power(s) of attorney with sufficient
specificity to support the Appointment of Substitute Trustee"
located in the record that "authoriz[ed] acts" by the "putative
attorney-in-fact acting" on behalf of BAC." Id., ¶ 14.

On September 21, 2010, MERS, as nominee, "executed" an
assignment of the note and deed of trust to BAC; this assignment
was placed in the Tarrant County records as "Instrument D21
0244633." Id., ¶ 10. On October 5, 2010, the property was sold at
the foreclosure sale to Fannie Mae. Id. at 10, ¶ 37. The BAC-

6

appointed substitute trustees issued to Fannie Mae a substitute

trustee's deed, "dated October 5, 2010, of record October 18,

2010 as Instrument D210256498." Id. at 5, ¶ 16.

After the foreclosure sale, "Fannie Mae refused to rescind

the foreclosure or to stop eviction proceedings," despite BAC's

written request for rescission. Id. at 11, ¶ 38. At the same

time, BAC assured plaintiffs that "that if Fannie Mae would do

the rescission, BAC would proceed with the HAMP modification of

the Loan." Id., ¶ 39. Specifically, on October 15, 2010, and

October, 18, 2010, BAC employee Ken Ostereberg, gave plaintiffs

"firm assurances" that he

> had approval from BAC managers--two levels higher than
> his own--that if (and as soon as) Fannie Mae approved
> the rescission, then BAC would reinstate the Loan and
> provide Plaintiffs with the modification of the Loan
> that had been in process under the HAMP.

Id.

In their Complaint, plaintiffs asserted claims against

defendants for "Fraudulent Lien Related Instrument," breach of

contract, negligent misrepresentation, wrongful foreclosure,

unreasonable collection efforts, and for violations of the Texas

Finance Code ("Finance Code"), the Texas Deceptive Trade

Practices Act ("DTPA"), and the Texas Property Code ("Property

Code"). As relief, plaintiffs sought compensatory, exemplary, and

statutory damages, attorney's fees and costs, injunctive relief

allowing them to maintain possession and regain title to the property, and declaratory relief barring any foreclosure and eviction proceedings.

On January 5, 2012, defendants filed their second motion to dismiss plaintiffs' claims for: (1) violations of the Finance Code; (2) violations of the DTPA; (3) violation of the Property Code; (4) wrongful foreclosure; (5) negligent misrepresentation; and (6) unreasonable collection efforts. With respect to these claims, defendants argued that plaintiffs' allegations failed to state a plausible claim for relief. Defendants did not move to dismiss the breach of contract or "fraudulent lien" claims. Plaintiffs filed a response, and defendants filed a reply.

II.

Analysis

A.   The Rule 8(a)(2) Pleading Standards

The court now considers the standard of pleading, and applies these standards to the Complaint. Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiffs to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiffs' right to relief is plausible. Iqbal, 129 S. Ct. at 1950. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

B.   Applying the Standards to the Complaint

Proceeding only on the basis of the information before the court in plaintiffs' Complaint, the court finds that the allegations for most of the claims fall short of the pleading standards. With respect to most claims, the Complaint fails to meet the standard set forth in Rule 8(a)(2), as interpreted by the Supreme Court in Twombly and Iqbal. The court agrees with defendants that the allegations concerning claims for wrongful foreclosure, unreasonable collection, and violations of the Property Code, along with certain violations of the Finance Code and DTPA, are nothing more than conclusory assertions. However, with respect to the claims against BAC for violations of the DTPA and of sections 392.301(a)(8) and 392.304(a)(8) of the Finance Code, the Complaint contains factual allegations that are sufficient to give BAC notice of plaintiffs' claims against it.

The court considers plaintiffs' theories of recovery in the following order: first, the claim for violations of Finance Code; second, the claim for violations of the DTPA; next, the claim for negligent misrepresentation; next, the claim for violations of Property Code; next, the claim for wrongful foreclosure; and finally, the claim for unreasonable collection efforts.

1.   <u>Finance Code Claim</u>

The court first turns to the claim for violations of the Finance Code. Plaintiffs alleged that BAC alone violated section 392.301(a)(3) of the Finance Code and that both BAC and Fannie Mae violated sections 392.301(a)(8) and 392.304(a)(8) of the Finance Code. <u>See</u> Compl. at 12-14.

The court concludes that plaintiffs have not stated sufficient facts in support of a claim for a violation of section 392.301(a)(3) against BAC. As to sections 392.301(a)(8) and 392.304(a)(8), the court concludes that plaintiffs have stated sufficient facts for a claim against BAC, but not Fannie Mae. Thus, the only surviving Finance Code claims are the section 392.301(a)(8) and 392.304(a)(8) claims against BAC.

a.   <u>Section 392.301(a)(3) Claim Against BAC</u>

The court first considers plaintiffs' section 392.301(a)(3) claim as asserted solely against BAC. Section 392.301(a)(3) of the Finance Code states that a debt collector is prohibited from "representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." Tex. Fin. Code § 392.301(a)(3). Plaintiffs alleged that "BAC represented to third parties, through incorrect credit

11

reporting, that the consumer . . . was willfully refusing to pay a nondisputed consumer debt . . . when the debt was in dispute." Compl. at 13, ¶ 47.

Other than these wholly conclusory allegations, however, there are no facts pleaded to support such a claim. Plaintiffs do not allege when such representations were made, nor do plaintiffs identify who these third parties were or which underlying debt was in dispute.[10] Furthermore, plaintiffs do not allege that they "notified in writing the debt collector of the dispute." Tex. Fin. Code § 392.301(a)(3). In short, the facts pleaded do not support a claim for a violation of section 392.301(a)(3) against BAC.[11] Accordingly, this claim is being dismissed.

---

[10]Further, plaintiffs admitted they "missed" payments on their loan. Compl. at 6, ¶ 20. Plaintiffs also failed to allege that they effectively cured their original default; they merely stated that BAC allegedly agreed to allow them to pay a "lower[ed]" monthly amount in order to avoid foreclosure. Id.

[11]Defendants also argued that plaintiffs' section 392.301 Finance Code claim was more properly brought under the Fair Credit Reporting Act ("FCRA"). The court concludes that the requirements for a FCRA claim were not met, because plaintiffs failed to allege that the "third parties" were actually "credit reporting agencies." 15 U.S.C. § 1681s-2(a) (titled "Duty of furnishers of information to consumer reporting agencies") ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."). The Complaint only stated in a general manner that defendants wrongfully disclosed information to "third parties." Compl. at 13, ¶ 47. Thus, the court is only addressing plaintiffs' allegations as brought under section 392.301(a)(3) of the Finance Code.

b.   <u>Section 392.301(a)(8) Claim Against BAC and Fannie</u>
     <u>Mae</u>

The court next turns to the section 392.301(a)(8) claim as
alleged against BAC. Section 392.301(a)(8) provides that "[i]n
debt collection, a debt collector may not use threats, coercion,
or attempts to coerce that employ any of the following practices
. . . threatening to take an action prohibited by law."  <u>See</u> Tex.
Fin. Code § 392.301(a)(8).

According to plaintiffs, BAC violated section 392.301(a)(8)
by threatening to foreclose on the property: (1) with the
knowledge that plaintiffs were not in default under the trial
loan modification, Compl. at 12, ¶ 45; (2) without first giving
plaintiffs notice of default and opportunity to cure, <u>id.</u>, ¶ 44;
and (3) without the legal capacity to do so, <u>id.</u> ¶ 46,

First, plaintiffs alleged that because they had a "trial"
modification agreement with BAC, they were not in default and
could not be foreclosed upon. <u>Id.</u> at 9, ¶ 32. However, plaintiffs
also alleged that BAC failed to ever give plaintiffs "any written
confirmation of the modification agreement BAC had offered to
Plaintiffs." <u>Id.</u> at 20, ¶ 79. Texas law clearly provides that
such statements concerning loan modifications are not enforceable
unless they are made in writing. Tex. Bus. & Com. Code § 26.02.

Specifically, section 26.02 of the Texas Business and Commercial
Code states:

> A loan agreement in which the amount involved in the
> loan agreement exceeds $50,000 in value is not
> enforceable unless the agreement is in writing and
> signed by the party to be bound or by that party's
> authorized representative.

Id. Thus, the court does not believe plaintiffs can plausibly
claim that BAC had an enforceable trial loan modification
agreement with them and that BAC breached such agreement.  On
this ground, therefore, the Complaint fails to state a claim
entitling plaintiffs to relief.

Second, plaintiffs alleged that BAC's threat to foreclose
was in violation of the law, because they were not given prior
notice of default or opportunity to cure, as required by section
51.002(d) of the Property Code. Even assuming this were true, the
only statement alleged by plaintiffs in support of this claim is:
"At no time did either Plaintiff receive a notice of default and
opportunity to cure from BAC or anyone claiming to act for them."
Id., at ¶ 32. The mere allegation by plaintiffs that they did not
receive notice does not show that BAC failed to comply with the
statutory requirements. Inasmuch as plaintiffs fail to allege
that BAC failed to serve the notice required by section 51.00(d),
plaintiffs' Complaint fail to state a claim entitling them to
relief on this ground.

Third, plaintiffs alleged that BAC lacked the authority to serve notice of the foreclosure sale, because "there was no valid recorded assignment of the lien" at the time the notice was issued. Id. at 13, ¶ 46. Plaintiffs appear to complain that the assignment of the note and deed of trust was not effective until September 21, 2010, as opposed to August 13, 2010.[12] If it were the later date, as plaintiffs alleged, then the assignment did not occur far enough in advance of the October 5, 2010 foreclosure sale for BAC to properly serve notice. In response, defendants argue that the "effective" date of the assignment was August 13, 2010, which was over twenty-one days before the October 5, 2010 sale.[13]   Thus, defendants argue, the assignment

---

[12]In the Complaint, Plaintiffs alleged that because MERS "executed" the assignment of the note and deed of trust to BAC on September 21, 2010, "there was not a valid assignment of the Note and Deed of Trust to BAC until less than twenty-one (21) days before the October 5, 2010 substitute trustee's sale." Compl. at 5, ¶¶ 10, 11.

[13]Defendants' first motion to dismiss attached as exhibits two documents relevant to this issue: (1) the Assignment of the Note and Deed of Trust and (2) the Appointment of the Substitute Trustee.

First, the Assignment of the Note and Deed of Trust states that "8/13/2010" was the "effective" date of assignment from MERS to BAC. Defs.' Br. in Supp. of Sept. 19, 2011 Mot. to Dismiss, App., Ex. 2 (stating "Date of Assignment: Effective: 8/13/2010"). However, this same document was not acknowledged by the signer, David Seybold, before the notary public, M.K. Huddleston, until over a month later--on September 21, 2010. Id.

Second, the Appointment of the Substitute Trustee, known as Document No. D207341388, was recorded in the Tarrant County public records on September 10, 2010. Defs.' Br. in Supp. of Sept. 19, 2011 Mot. to Dismiss, App., Ex. 3. This document shows that the appointment of substitute trustee was executed on August 27, 2010, by BAC, acting through its attorney-in-fact, Stephen C. Porter. Id.

was completed with more than sufficient time for BAC to serve the foreclosure notice.

Having considered the parties' arguments, the court concludes that there is not anything in the record to show what date constituted the date of the assignment of the note and deed of trust. In the document provided by defendants titled "Assignment of Note and Deed of Trust," the "effective" date of the assignment was August 13, 2010. Defs.' Br. in Supp. of Sept. 19, 2011 Mot. to Dismiss, App., Ex. 2. However, the actual date that the document was acknowledged by the signer before a notary public was well over a month later--September 21, 2010. Id. In short, there is nothing in the record that would lead to a conclusion that the document was signed on any other date than September 21, 2010, the date of acknowledgement by the signer before the notary public. Defendants have therefore failed to point to anything in the record to refute plaintiffs' claim that the assignment was not timely done for BAC to serve notice of the foreclosure sale.

Accordingly, plaintiffs have alleged sufficient facts in support of their section 392.301(a)(8) claim against BAC.

The court next considers the section 392.301(a)(8) claim as asserted against Fannie Mae. Plaintiffs alleged that Fannie Mae violated section 392.301(a)(8), but this claim against Fannie Mae

was wholly "predicated on the unlawful acts of BAC." Compl. at
14, ¶ 34. Plaintiffs have pleaded no facts to show that Fannie
Mae engaged in any independent conduct, had any involvement in
the alleged acts of BAC, or can be held responsible for such
acts. The mere allegation, for instance, that Fannie Mae
purchased the property at the foreclosure sale does not support a
conclusion that Fannie Mae engaged in any conduct constituting a
threat to undertake illegal action. In sum, plaintiffs fail to
state a claim under section 392.301(a)(8) against Fannie Mae.
This claim, therefore, is dismissed as to Fannie Mae, but not to
BAC.

       c.   <u>Section 392.304(a)(8) Claim Against BAC and Fannie
           Mae</u>

The court finally turns to the section 392.304(a)(8) claim,
as asserted against both defendants. Section 392.304(a)(8) of the
Finance Code provides: "In debt collection or obtaining
information concerning a consumer, a debt collector may not use a
fraudulent, deceptive, or misleading representation" that
"misrepresent[s] the character, extent, or amount of a consumer
debt, or misrepresent[s] the consumer debt's status in a judicial
or governmental proceeding." Tex. Fin. Code § 392.304(a)(8).

The Complaint alleged that BAC "misrepresented the character
of a consumer debt . . . in the foreclosure process" and Fannie

Mae did the same "in the forcible detainer matter." Compl. at 14, ¶ 49. In support, plaintiffs pointed to several specific statements made by BAC employees to show that BAC misrepresented the status of plaintiffs' loan during the foreclosure process.[14]

However, there are no factual allegations pleaded with sufficient specificity to support a conclusion that Fannie Mae did likewise, or that Fannie Mae made such statements in a judicial proceeding in a manner amounting to a violation of section 392.304(a)(8).

Thus, the Complaint has alleged sufficient factual allegations in support of a section 392.304(a)(8) claim against BAC. With respect to Fannie Mae, this claim is being dismissed.

2.  <u>DTPA Claim</u>

The court now turns to the related issue of whether plaintiffs have pleaded a plausible DTPA claim against defendants. Plaintiffs contended they were entitled to recover under the DTPA for defendants' violations of the Finance Code by incorporation into the DTPA. As support, plaintiffs relied on the alleged violations of the Finance Code as their sole basis of recovery under the DTPA. <u>Id.</u> at 14-15; Tex. Fin. Code § 392.404(a) ("A violation of this chapter [the Finance Code] is

---

[14]For instance, the Complaint alleged that BAC employees "repeatedly" assured plaintiffs that their home would not be foreclosed upon. Compl. at 6-7, ¶¶ 21, 26.

a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [the DTPA], and is actionable under that subchapter.").

The allegations underlying the DTPA claims as to Fannie Mae are the same as those the court has already determined were factually insufficient under the Finance Code claim. Because the Finance Code claims against Fannie were dismissed in their entirety, the DTPA claim against Fannie Mae is also being dismissed in their entirety.

However, the court did conclude that as to BAC, plaintiffs alleged a sufficient factual basis in support of their section 392.301(a)(8) and 392.304(a)(8) Finance Code claims. To the extent that plaintiffs' DTPA claim is derivative of their sections 392.301(a)(8) and 392.304(a)(8) Finance Code claims against BAC, BAC is not entitled to dismissal of the DTPA claim.

   3.   Negligent Misrepresentation Claim

Plaintiffs base their negligent misrepresentation claim against BAC on allegations that BAC verbally misled and misrepresented that their loan was in the loan modification process and that foreclosure would not occur during this period before the foreclosure sale. Compl. at 15-17.

To state a claim for negligent misrepresentation, plaintiffs must allege that: (1) the representation was made by defendant in

19

the course of its business or in a transaction in which it has a
pecuniary interest; (2) defendant supplied false information for
the guidance of others in their businesses; (3) defendant did not
exercise reasonable care or competence in obtaining or
communicating the information; and (4) plaintiffs suffered
pecuniary loss by justifiably relying on the representation.
<u>Fed. Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442
(Tex. 1991).

In the Complaint, plaintiffs alleged that BAC misled them
with false information regarding the status of the mortgage loan,
the possibility of obtaining a loan modification, whether there
had been a valid loan modification, and the scheduled date of
foreclosure sale. Compl. at 15-17, ¶ 56-62. However, there are no
factual allegations in the Complaint in support of justifiable
reliance, in order to show that plaintiffs were justified in
relying upon BAC's oral statements that it was "going to modify
the loan." <u>Id.</u> at 6, ¶ 20. Instead, plaintiffs made statements to
the contrary, and alleged that BAC "did all of the foregoing acts
without giving to Plaintiffs any written confirmation of the
modification agreement BAC had offered to Plaintiffs." <u>Id.</u> at 20,
¶ 79. As the court previously noted, the law is clear that such
statements concerning the loan modification and the collateral
agreement were not enforceable unless they were made in writing.

Tex. Bus. & Com. Code § 26.02. Consequently, any reliance on these alleged misrepresentations was not justifiable. Plaintiffs therefore cannot maintain an action for negligent misrepresentation.

### 4.   The Property Code Claim

The court now considers plaintiffs' claims concerning violations of the Property Code. Plaintiffs appear to contend that BAC was not the mortgage servicer, although this argument is not supported by other allegations in the Complaint suggesting otherwise. Compl. at 18. For instance, plaintiffs stated that they made payments to BAC and negotiated a loan modification under HAMP with BAC. Id. 6-8. The allegations concerning BAC are therefore simply not plausible.

Moreover, after evaluating the Complaint, the court cannot discern what other factual allegations are pleaded in support of this claim. Plaintiffs generally allude to sections 51.001 and 51.0025 of the Property Code, without identifying which specific requirements were not followed.[15] Id. at 18. The court cannot divine what statutory requirements were allegedly so deficient

---

[15]According to plaintiffs, they conducted some sort "investigation to ascertain whether [BAC] is acting under any grant of authority from the payee of the Note that would effectively constitute BAC as the mortgagee for purposes of Texas Property Code § 51.001 [sic], hence enabling BAC to constitute itself or another entity as 'mortgage servicer." Compl. at 18, ¶ 71. Plaintiffs then conclude this "investigate has revealed the probable lack of any authority for the Assignment, and hence for any capacity on the part of BAC." Id.

with respect to BAC's appointment of the substitute trustee. Thus, the court believes that the Complaint is devoid of any factual allegations to support a conclusion that the substitute trustee appointed by BAC lacked the authority to conduct the foreclosure process.

Plaintiffs have failed to state a claim for a violation of the Property Code. This claim is therefore being dismissed.

5.   Wrongful Foreclosure Claim

The court now turns to the wrongful foreclosure claim against BAC.  To state a claim for wrongful foreclosure, plaintiffs must show: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi 2008, no pet.); Am. Sav. & Loan Ass'n of Houston v. Musick, 531 S.W.2d 581, 587 (Tex. 1976)

In a "wrongful foreclosure" claim, it is not enough to merely show a defect in the foreclosure process; the plaintiff must also show that an inadequate sales price resulted from the defect alleged. See Musick, 531 S.W.2d at 587. While plaintiffs alleged that the property was sold at substantially below market value, Compl. at 17, they make only conclusory statements in support, and fail to specify any amounts as to the sale price or

the fair market value of the property. Additionally, plaintiffs did not allege facts that would support a conclusion that an alleged defect caused the sales price to be inadequate.

Because the court cannot pinpoint the nature of the defect from the Complaint, the court cannot discern what caused the sales price to be rendered inadequate. Thus, plaintiffs have failed to plead sufficient factual allegations to show that BAC is liable for a wrongful foreclosure claim.

6.   Unreasonable Collection Claim

The court next evaluates plaintiffs' unreasonable collection claim against BAC. Unreasonable collection is an intentional tort that requires plaintiffs to prove that defendants' actions amount "to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." EMC Mortg. Corp. v. Jones, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no pet.). The Texas Supreme Court has found it "necessary that the lender carry on a campaign of harassment in order to entitle the borrowers to actual damages, much less exemplary damages." Ware v. Paxton, 359 S.W.2d 897, 899 (Tex. 1962). The Complaint engages in a lengthy description of various misconduct by defendants, concerning the placement of the property in foreclosure.  Nonetheless, plaintiffs failed to allege any facts to support a conclusion that BAC's actions were done maliciously,

23

wantonly, intentionally, or willfully. It is apparent to the court that the Complaint lacks any allegations to support an unreasonable collection claim. There is no allegation that BAC harassed plaintiffs in such a manner, that BAC acted intentionally to cause plaintiffs mental anguish and bodily harm, or that BAC can be held liable for any misconduct.  Accordingly, plaintiffs fail to state a claim for unreasonable collection against BAC.

III.

Conclusion

The court has already afforded plaintiffs an opportunity to twice file an amended complaint that complies with the requirements of Rule 8(a)(2), alleging with particularity the facts that they contend will establish their right to recover against defendants as to each theory of recovery alleged.

For the reasons stated above, the court concludes that the following claims alleged against defendants should be dismissed because of plaintiffs' failure to correct their pleading defects: the claims asserted against BAC for negligent misrepresentation, wrongful foreclosure, and unreasonable collection; the claims asserted against Fannie Mae for violations of the DTPA and sections 392.301(a)(8) and 392.304(a)(8) of the Finance Code; and the claims against both defendants for violations of the Property

24

Code and of section 392.301(a)(3) of the Finance Code. Accordingly, the above-described claims are being dismissed with prejudice.

The court, however, concludes that the allegations on the claims against BAC for violations of the DTPA and sections 392.301(a)(8) and 392.304(a)(8) of the Finance Code could state a claim entitling plaintiffs to relief, and that defendants' motion to dismiss as to those claims is denied.

Therefore,

The court ORDERS that the claims asserted by plaintiffs against Fannie Mae, for violations of the Property Code, the Finance Code, and the DTPA, be, and are hereby, dismissed with prejudice.

The court further ORDERS that the claims asserted by plaintiffs against BAC for negligent misrepresentation, wrongful foreclosure and unreasonable collection, and the claims for violations of the Property Code and section 392.301(a)(3) of Finance Code, be, and are hereby, dismissed with prejudice.

SIGNED May **23**, 2012.

JOHN McBRYDE
United States District Judge

25