U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 21 2013
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NEIL GILLESPIE, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-388-A |
| | § | |
| BAC HOME LOANS SERVICING, LP, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
and
## ORDER

Now before the court is the motion for summary judgment, filed in the above-captioned action by defendant BAC Home Loans Servicing, LP ("BAC"). Plaintiffs, Neil Gillespie ("Neil") and Ona Gillespie ("Ona") (collectively, "plaintiffs"), filed a response to the motion, and BAC filed a reply. Having now considered all of the parties' filings, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

### Background and Plaintiffs' Claims

Plaintiffs initiated this removed action by a pleading filed in the District Court of Tarrant County, 348th Judicial District, on May 5, 2011, against BAC and Federal National Mortgage Association ("Fannie Mae"), asserting various causes of action relating to the foreclosure of plaintiffs' home in 2010.

Defendant removed the case to federal court on June 10, 2011, alleging that the court has jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims were preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and also under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.00. The court later rejected both jurisdictional theories described above, but determined that federal jurisdiction was proper by reason of 12 U.S.C. § 1452(f), which provides in relevant part that "all civil actions to which [Fannie Mae] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value." See Memo. Op. & Order, May 23, 2012, at 1-2 n.2. The court also determined at that time that it could exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims asserted by plaintiffs against BAC.

Plaintiffs filed their second amended complaint ("complaint"), which is the live pleading in this action, on December 22, 2011, asserting claims for (1) "Fraudulent Lien Related Instrument" ("fraudulent lien"), (2) breach of contract, (3) negligent misrepresentation, (4) wrongful foreclosure, (5) unreasonable collection efforts, (6) violations of the Texas

Finance Code, (7) violations of the Texas Deceptive Trade Practices Act ("DTPA"), and (8) violations of the Texas Property Code. The complaint seeks injunctive relief prohibiting any further foreclosure proceedings against plaintiffs by BAC; unspecified compensatory, statutory, and exemplary damages; attorney's fees and costs; and an order quieting title in the property to the plaintiffs. Shortly after plaintiffs filed their second amended complaint, defendants filed a motion to dismiss all of plaintiffs' claims except the fraudulent lien claim and the breach of contract claim. On May 23, 2012, the court granted the motion in part and denied it in part, dismissing the majority of plaintiffs' claims. The claims that survived the motion are (1) violations of the Finance Code against BAC only; (2) violations of DTPA against BAC only; (3) fraudulent lien; and (4) breach of contract. Neither the fraudulent lien claim nor the breach of contract claim were purported to be asserted against Fannie Mae, which means that there are no remaining claims asserted by plaintiffs against Fannie Mae, and no basis for any relief for plaintiffs through Fannie Mae.

## II.

### The Summary Judgment Motion

BAC argues for summary judgment on the grounds that it is

entitled to judgment as a matter of law because each of plaintiffs' claims lacks merit. First, BAC argues that plaintiffs' fraudulent lien claim fails because (1) plaintiffs lack standing to challenge the assignment of the note and deed of trust to BAC, and (2) there is no evidence that the appointment of the substitute trustee was invalid or fraudulent. Next, BAC contends that plaintiffs' claim under section 392.301(a)(8) of the Finance Code fails because plaintiffs admitted that BAC did not threaten to take an action prohibited by law, and BAC was authorized as the mortgage servicer to serve notice of the foreclosure sale. Third, BAC argues that plaintiffs' claim under section 392.304(a)(8) fails because the record is devoid of any evidence that BAC misrepresented the character of the loan to third parties or the public. Fourth, BAC asserts that plaintiffs' DTPA claims fail because plaintiffs are not consumers for purposes of the DTPA and because the underlying Finance Code claims fail. Finally, BAC contends that plaintiffs' breach of contract claim fails because plaintiffs have offered no evidence to support the claim and because the claim is barred by the statute of frauds.

Plaintiffs' response focuses on their contention that BAC did not have the authority to foreclose primarily because the assignment of the note and deed of trust and/or the appointment

of the substitute trustee were invalid. It is plaintiffs' position that because of the alleged invalidity, "anything done in reliance on the Appointment, including the giving and posting of notices of default and opportunity to cure and of trustee's sale, and the execution of a substitute trustee's deed by such trustees appointed without capacity, were all invalid." Pls.' Br. at 2. Plaintiffs also challenge the validity of the note at issue, argue that BAC's summary judgment evidence contains "inconsistencies," and assert that Neil's affidavit supports plaintiffs' claims.

BAC has put forth an argument in its reply, and by separate motion filed with the reply, that plaintiffs' summary judgment evidence should be stricken, as plaintiffs did not comply with discovery procedures, twice failed to appear for scheduled depositions, and failed to respond to interrogatories. BAC claims that, while plaintiffs did respond to most of BAC's requests for admissions, plaintiffs provided no information or explanation where requested, and never provided any documents to BAC support their claims. BAC states that much of the summary judgment evidence produced by plaintiffs had never been provided to BAC, even though BAC had made document requests, had served interrogatories and requests for admissions, and had attempted to take both plaintiffs' depositions. The court is troubled by the

allegations that plaintiffs failed to abide by the proper discovery procedures, but finds that the summary judgment motion can be granted on the merits, and that the court need not rule on whether to strike plaintiffs' evidence.

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

On September 14, 2007, plaintiffs executed a note in which they promised to repay the original principal amount of $194,750.00, plus interest, to American Sterling Bank ("American Sterling"). The note was secured by a deed of trust to plaintiffs' property, and granted MERS, as beneficiary and nominee for American Sterling and its successors and assigns, a first lien against the property. The loan agreement, signed by plaintiffs on the same day, provided that the terms of the note and deed of trust could only be modified in writing. BAC has serviced the loan since September 2007 on behalf of Fannie Mae. Plaintiffs made regular payments on the note until sometime in early 2010, when plaintiffs experienced financial setbacks and could not make their mortgage payments.

At some point in March 2010, plaintiffs decided to apply for a loan modification with BAC, pursuant to the Home Affordable

Modification Program ("HAMP"), hoping to modify their loan permanently. Plaintiffs received a letter dated March 16, 2010, advising them that they may be eligible to participate in HAMP, and that they should call BAC to learn more about the program. Plaintiffs were told via telephone on March 18, 2010, that they were pre-qualified for HAMP at that time. Around the same time, plaintiffs submitted documentation detailing their financial situation. They were orally apprised of the trial payment amount. When plaintiffs attempted to make the September 2010 payment on August 31, 2010, a BAC representative informed them that it could not accept the payment because plaintiffs' home had been placed in foreclosure.

Plaintiffs received a letter from BAC dated May 10, 2010, which informed plaintiffs that their loan was in "serious default because the required payments ha[d] not been made," and that the plaintiffs could cure the default and reinstate the loan by paying $8,004.51 by June 9, 2010. Def.'s App. at 135. The letter notified plaintiffs that if they did not cure the default, their home could be foreclosed upon, and also informed them that they might be eligible for some form of payment assistance. Plaintiffs received a nearly identical letter dated July 7, 2010, which stated that the amount needed to cure the default at that time was $10,017.79, and the deadline to cure the default was

August 6, 2010. Plaintiffs did not cure the default.

On August 27, 2010, BAC appointed substitute trustees to conduct a foreclosure sale of the property. Plaintiffs received a letter dated August 30, 2010, from BAC's legal counsel, informing plaintiffs that foreclosure proceedings were being initiated because payment on the past due balance on the debt had not been received. The notice of substitute trustee sale, included with the above-described letter, stated that the property was set for sale on October 5, 2010. On September 21, 2010, MERS executed as assignment of the note and deed of trust in favor of BAC, to be effective as of August 13, 2010. On October 5, 2010, the property was sold at the foreclosure sale to Fannie Mae.

IV.

Analysis

A.  Subject Matter Jurisdiction

Because the status of Fannie Mae as a defendant was the sole basis for the court's exercise of original subject matter jurisdiction, and all claims against Fannie Mae have been dismissed in this action, the court must determine whether it should exercise supplemental jurisdiction over the state law claims that remain against BAC, before the court reaches the merits of the summary judgment motion. Under 28 U.S.C. §

1367(c), a district court is authorized to decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." Brookshire Bros. Holding, Inc. v. Dayco Prods., 554 F.3d 595, 602 (5th Cir. 2009). Courts should consider the statutory factors listed in § 1367(c) and the common law factors of judicial economy, convenience, fairness, and comity. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988); Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999). These interests "are to be considered on a case-by-case basis, and no single factor is dispositive." Mendoza v. Murphy, 532 F.3d 342, 346 (5th Cir. 2008). The Fifth Circuit has also stated:

> Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant

amount of judicial resources . . . that court has
          abused its discretion under 28 U.S.C. § 1367.

Brookshire Bros., 554 F.3d at 602-03 (determining that the district court had abused its discretion in declining to exercise jurisdiction and citing similar cases).

In this action, the factors weigh in favor of this court exercising supplemental jurisdiction over the claims remaining against BAC. This lawsuit has been pending for nearly two years, the discovery deadline has passed, the parties have fully briefed the summary judgment motion, the court is familiar with the facts and issues, and there are no novel or complex areas of state law, or exceptional circumstances, that would justify remanding this action to state court. See Mendoza, 532 F.3d at 346-47. Thus, the court moves on to an analysis of the merits of the motion for summary judgment.

B.  Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no

genuine dispute as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324. <u>See also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986).

C. <u>Fraudulent Lien Related Instrument Claim</u>

Plaintiffs (1) challenge the validity of the assignment

of the note and deed of trust by MERS to BAC, and (2) contend that a MERS officer and the substitute trustee handling the foreclosure sale were appointed improperly. Plaintiffs claim that BAC's actions in regards to the assignment and appointment establish violations of Section 12.002 of the Texas Civil Practice & Remedies Code. First, to the extent that plaintiffs are trying to challenge the validity of the assignment, they have no standing to do so, as they are not parties to such assignment. See, e.g., DeFranceschi v. Wells Fargo Bank, N.A., 837 F. Supp.2d 616, 623 (N.D. Tex. 2011); McAllister v. BAC Home Loans Servicing, LP, No. 4:10-CV-504, 2011 WL 2200672 at *5 (E.D. Tex. Apr. 28, 2011).

As far as plaintiffs' claim that BAC violated section 12.002 of the Texas Civil Practice and Remedies Code, BAC makes detailed arguments in its brief that no such violation occurred, that there is no evidence in the record that a violation occurred, and that plaintiffs therefore cannot establish the elements of a claim under section 12.002. Plaintiffs, however, fail to discuss in their brief the code section they alleged was violated, and fail to respond to BAC's contentions regarding the code section. Instead, plaintiffs seem to assert that the appointment of Seybold as

an officer of MERS and the subsequent appointment of a substitute trustee somehow violated that code section, amounted to fraud, or constituted some other type of violation. Their primary contention is that BAC has not produced a recorded power of attorney relating to the appointment or assignment, that there is no such power of attorney in the public record, and, therefore, the appointment is invalid, as is "anything done in reliance on the [a]ppointment." Pls.' Br. at 2. Interestingly, plaintiffs appear to rely on a provision in the Texas Probate Code, rather than the relevant provisions of the Texas Property Code that regulate foreclosures generally and appointments of substitute trustees specifically. See Tex. Prop. Code § 51.0075.

> Section 51.00759(c) provides:
>
> Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee . . . to succeed to all title, powers, and duties of the original trustee. A mortgagee or mortgage servicer may make an appointment or authorization under this subsection by power of attorney, corporate resolution, or any other written instrument.

The plain language of the Property Code does not indicate the existence of any requirement that the appointment of a substitute trustee be recorded to be valid, and courts interpreting the provisions have not found such a

requirement. See <u>Partain v. Wells Fargo Bank, N.A.</u>, No. 4:11-CV-386-Y (N.D. Tex. Jan. 23, 2013); <u>Bittinger v. Wells Fargo Bank, N.A.</u>, 744 F. Supp.2d 619, 625 (S.D. Tex. 2010); <u>Broyles v. Chase Home Fin.</u>, No. 3:10-CV-2256-G, 2011 WL 1428904, at *2 (N.D. Tex. Apr. 13, 2011). Thus, BAC was not required to record a power of attorney for the assignment of the note or the appointment, and any claim based on the argument that recording was required must fail.

Plaintiffs raise a contention that BAC was not the mortgagee or mortgage servicer of the note, based on the fact that a copy of the note as it currently exists differs from a 2007 copy, in that the current copy contains subsequent endorsements on the last page. Plaintiff also contends that there are discrepancies between the declarations[1] of Adam Nunnallee ("Nunnallee") and Becky Howell ("Howell"), claiming that Nunnallee stated that BAC "was holding [the note] as mortgage servicer for [Fannie Mae]" and Howell's declaration "makes multiple averments that [Fannie Mae] was not the mortgagee, but [BAC] was the mortgagee." Pls.' Br. at 6. The court finds these arguments nothing more than word games and meritless attempts to dig through the record for issues of fact.

---

[1] Plaintiff incorrectly refers to the declarations as affidavits.

Plaintiffs point to no evidence that creates an issue of material fact, and the fraudulent lien claim must fail.

D.  Finance Code Section 392.301(a)(8) Claim

Plaintiffs contend that BAC violated section 392.301(a)(8) of the Texas Finance Code, which provides:

> (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:
>
> ***
>
> (8) threatening to take an action prohibited by law.

Plaintiffs argue that BAC's actions in the foreclosure proceedings were prohibited by law because BAC lacked the capacity to notice the foreclosure sale. Plaintiffs' contention is based on their theory that BAC was not the mortgagee or the mortgage servicer under the Texas Property Code, and that the assignment was invalid. BAC argues that (1) plaintiffs admitted that BAC did not "threaten to take action prohibited by law" by failing to respond to or object to a request for admissions, and (2) BAC was authorized to serve notice of the foreclosure sale as a mortgage servicer, and therefore did not threaten to take action prohibited by law. Plaintiffs again point to no specific evidence that can support their claim or refute BAC's arguments, and plaintiffs also rely on the same argument rejected supra at

15

IV.C, regarding the validity of the assignment of the note and the appointment of the substitute trustee. Accordingly, plaintiffs' section 392.301(a)(8) claim fails.

E.   Finance Code Section 392.304(a)(8) Claim

Plaintiffs contend that BAC violated section 392.304(a)(8) of the Finance Code, which prohibits a debt collector from using a "fraudulent, deceptive, or misleading representation" that "misrepresent[s] the character, extent, or amount of a consumer debt, or misrepresent[s] the consumer debt's status in a judicial or governmental proceeding." Plaintiffs allege that BAC "misrepresented the character of a consumer debt (the Loan) to third parties and to the public at large in the foreclosure process," Compl. at 14, ¶ 49, and that Neil's affidavit supports this allegation by outlining plaintiffs' dealings with BAC in the HAMP process and explaining how BAC's actions failed to comply with HAMP requirements. Pls.' Br. at 7. However, Neil's affidavit describes documentation and conversations between plaintiffs and BAC relating to the loan modification process and the possibility of foreclosure, but nothing that can show that BAC made representations to a third party regarding the character of the loan as alleged by plaintiffs. Plaintiffs seem to base this claim on their

belief that the foreclosure was erroneous and wrongful, and, therefore, posting notice of foreclosure is a misrepresentation of the character of plaintiffs' loan. Such a theory has no merit, and, as plaintiffs have produced no evidence of any misrepresentation by BAC that falls within the terms of section 392.304(a)(8), plaintiffs' claim must fail.

F.  DTPA Claims

Because plaintiffs' DTPA claims derive from their Finance Code claims, and their Finance Code claims have been dismissed, plaintiff's DTPA claims also must be dismissed.

G.  Breach of Contract Claim

Plaintiffs claim that BAC breached a contract to modify the loan; however, BAC contends that (1) plaintiffs have offered no evidence to support the claim, and (2) the claim is barred by the statute of frauds. Plaintiffs have expressly acknowledged, by signing the loan agreement, that the loan could not be modified unless it was modified in writing. Further, section 26.02(b) of the Texas Business and Commerce Code provides:

> A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

17

Tex. Bus. & Comm. Code § 26.02(b). Plaintiffs have expressly admitted that there was never written confirmation of the loan modification, and have produced no evidence of a written agreement modifying the loan signed by defendant. Further, plaintiffs have failed to address BAC's argument that the statute of frauds applies and have failed to identify any evidence that can rebut BAC's contention. Thus, plaintiffs' breach of contract claim fails.

V.

Order

Therefore,

The court ORDERS that BAC's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiffs, Neil Gillespie and Ona Gillespie, against defendants, BAC Home Loans Servicing and Federal National Mortgage Association, be, and are hereby, dismissed with prejudice.

The court further ORDERS that any pending motions in the above-captioned action be, and are hereby, denied as moot.

SIGNED February 21, 2013.

JOHN McBRYDE
United States District Judge